

[PUBLISH]

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE ELEVENTH CIRCUIT

No. 09-15141

| FILED |
| U.S. COURT OF APPEALS |
| ELEVENTH CIRCUIT |
| AUGUST 5, 2010 |
| JOHN LEY |
| CLERK |

D. C. Docket No. 08-00837-CV-MHT-CAS

DONALD B. ROE,
Personal Representative of the
Estate of Socorro Mejia, deceased,

Plaintiff-Appellant,

versus

MICHELIN NORTH AMERICA, INC.,
MICHELIN AMERICAS RESEARCH & DEVELOPMENT
CORPORATION,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Alabama

(August 5, 2010)

Before BLACK, HULL and KRAVITCH, Circuit Judges.

BLACK, Circuit Judge:

Plaintiff-Appellant Donald Roe, representing the estate of Socorro Mejia, sued Michelin North America, Inc. and Michelin Americas Research and Development Corp. (together, Michelin).  Roe sought to recover unspecified damages under Alabama's Wrongful Death Act.  Michelin, invoking diversity jurisdiction under 28 U.S.C. § 1332, removed the case to federal court pursuant to § 1441 and the first paragraph of § 1446(b).  Roe moved to remand, claiming Michelin failed to prove by a preponderance of the evidence that the amount in controversy exceeded $75,000.  The district court denied Roe's motion, finding the complaint sufficiently showed that the jurisdictional requirement was satisfied. Roe appeals the order.

The parties dispute whether a defendant can carry its jurisdictional burden by relying merely on the nature of the plaintiff's allegations, when only punitive damages are available and the plaintiff does not specify his monetary expectations. We conclude Michelin has carried its jurisdictional burden in this case and affirm the district court.

## I. BACKGROUND

Socorro Mejia, the decedent, was a passenger in a Ford Explorer when the tread on the vehicle's Michelin tire separated and caused the Explorer to lose control.  The vehicle rolled over, and both Mejia and the driver were killed.  Roe,

2

as the representative of Mejia's estate, sued Michelin claiming the company was negligent and wanton in designing, developing, and selling a tire that had a tendency to fail under foreseeable driving conditions.  Roe sought to recover damages under Alabama's Wrongful Death Act, a statute that allows plaintiffs to recover punitive, but not compensatory, damages.  *See Campbell v. Williams*, 638 So. 2d 804, 809 (Ala. 1994) (citing *Ala. Great S. R.R. v. Burgess*, 22 So. 913 (Ala. 1987)).  The complaint does not specify the amount of punitive damages Roe seeks, but merely prays "for damages allowed under Alabama's Wrongful Death Act, in an amount to be determined by a jury."

Prior to discovery, Michelin removed the case to federal district court.  Its notice of removal stated the parties were diverse and that, although Roe did "not state a specific amount of damages sought," it was facially apparent from the complaint that the case met the $75,000 amount-in-controversy requirement.  Roe did not deny that the amount in controversy exceeded $75,000 but nevertheless moved to remand, claiming Michelin failed to prove by a preponderance of the evidence that more than $75,000 was at issue.  Michelin opposed the motion, asserting that the nature of Roe's allegations alone was sufficient to show that the jurisdictional amount in controversy was satisfied.  The district court found that

Michelin had met its burden and denied Roe's motion to remand.  Roe now

challenges that denial on appeal.[1]

## II.  DISCUSSION

A.  Removal

If a state-court complaint states a case that satisfies federal jurisdictional

requirements, a defendant may remove the action to federal court pursuant to 28

U.S.C. § 1446(b).[2]  The defendant's notice of removal must contain "a short and

plain statement of the grounds for removal," and must be "signed pursuant to Rule

11 of the Federal Rules of Civil Procedure."  § 1446(a).

---

[1] The Alabama Association for Justice filed an amicus brief in support of Roe, and The Alabama Defense Lawyers Association filed one in support of Michelin.

[2] If a defendant relies on the complaint itself to establish the federal jurisdictional requirements, the removal is governed by the first paragraph of § 1446(b), which provides:
> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

Conversely, if removability is not apparent from the initial pleading, but is later ascertainable that the case "is or has become removable," removal is governed by the second paragraph of § 1446(b). That paragraph states:
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . .

Because Michelin relies on Roe's initial complaint as the basis for its removal, this case is governed by the first paragraph of § 1446(b).

Michelin's notice of removal states that it is facially apparent from Roe's complaint that the case, more likely than not, exceeds the $75,000 amount-in-controversy requirement.  Roe argues it is not for the district court to determine whether the claim likely exceeds $75,000, if the plaintiff has not explicitly stated the amount of damages he seeks.[3]

### 1. *Eleventh Circuit Precedent*

If a plaintiff makes "an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the . . . jurisdictional requirement." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).  In some cases, this burden requires the removing defendant to provide additional evidence demonstrating that removal is proper.[4]  *See, e.g.,*

---

[3] Plaintiff's arguments are grounded primarily in misapplied dicta from *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007). This case and the case in *Lowery* were removed under different paragraphs of § 1446(b). "While some of the language [of *Lowery*] sweeps more broadly, it is dicta insofar as a § 1446(b) first paragraph case, like this one, is concerned." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 747 (11th Cir. 2010).

[4] In § 1446(b) first-paragraph cases, the removing defendant may present additional evidence—business records and affidavits, for instance—to satisfy its jurisdictional burden. *See Pretka*, 608 F.3d at 753–54.  In addition to first-paragraph cases like *Pretka*, § 1446(b) permits the removal of two other types of cases, both of which are governed by the statute's second paragraph.  The first type of second-paragraph case (Type 1) is one that initially could have been removed had the parties possessed the relevant jurisdictional information, but, because the removability was not initially ascertainable, the defendant could not carry its jurisdictional burden until a later time.  The second type of second-paragraph case (Type 2) is one that

*Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744 (11th Cir. 2010). In other cases, however, it may be "facially apparent" from the pleading itself that the amount in controversy exceeds the jurisdictional minimum, even when "the complaint does not claim a specific amount of damages." *See id.* at 754 (quoting *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316,1319 (11th Cir. 2001)).

If a defendant alleges that removability is apparent from the face of the complaint, the district court must evaluate whether the complaint itself satisfies the defendant's jurisdictional burden. In making this determination, the district court is not bound by the plaintiff's representations regarding its claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of damages sought. *Id.* at 771. Indeed, in some cases, the defendant or the court itself may be better-situated to accurately assess the amount in controversy. *See id.* (explaining that "sometimes the defendant's evidence on the value of the claims will be even

---

originally could *not* have been removed because it initially did not satisfy federal jurisdictional requirements, but that later *becomes* removable because the nature of the dispute changes. Thus, whereas Type 1 cases have always been removable but the removability was not initially ascertainable, Type 2 cases shift from nonremovable to removable in nature.

This opinion considers removal only under the first paragraph of § 1446(b); it does not address the effect of *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007), on second-paragraph cases. Specifically, we do not decide whether or under what circumstances the second paragraph permits a defendant to present additional evidence to establish removability. We note only that this Court has explained, "[W]e do not believe that Congress, when it enacted § 1446, altered the traditional understanding that defendants could offer their own affidavits or other evidence to establish federal removal jurisdiction." *See Pretka*, 608 F.3d at 759.

better than the plaintiff's evidence," and that a court may use its judgment to

determine "which party has better access to the relevant information.").

Eleventh Circuit precedent permits district courts to make "reasonable

deductions, reasonable inferences, or other reasonable extrapolations" from the

pleadings to determine whether it is facially apparent that a case is removable. *See*

*id.* at 754. Put simply, a district court need not "suspend reality or shelve common

sense in determining whether the face of a complaint . . . establishes the

jurisdictional amount." *See id.* at 770 (quoting *Roe v. Michelin N. Am., Inc.*, 637

F.Supp. 2d 995, 999 (M.D. Ala. 2009)); *see also Williams*, 269 F.3d at 1319 (11th

Cir. 2001) (allowing district courts to consider whether it is "facially apparent"

from a complaint that the amount in controversy is met). Instead, courts may use

their judicial experience and common sense in determining whether the case stated

in a complaint meets federal jurisdictional requirements.[5] This approach is consistent with those of other circuits.

## 2. *Other Circuits' Removal Precedent*

Michelin removed this case pursuant to the first paragraph of § 1446(b). Because our precedent is relatively sparse in this area, we consider decisions from other circuits as persuasive authority. In doing so, however, we look only to those cases that have evaluated the allegations in plaintiffs' complaints to determine the value of unspecified amounts in controversy. In other words, we look only to other § 1446(b) first-paragraph cases in which the plaintiff does not make a specific damages demand. One circuit in particular, the Fifth Circuit, has often considered whether removability is "facially apparent" from an initial complaint, notwithstanding the omission of a specific damage request. The issue arises with some frequency in the Fifth Circuit, because "plaintiffs in Louisiana state courts,

---

[5] The ability of courts to use their judicial experience and common sense to evaluate the claims before them is unique neither to our Circuit, nor to this context. For instance, we have long allowed trial courts to determine whether remittitur is appropriate, based on the trial court's judgment of what award would reasonably be supported by a given claim or set of claims. *See, e.g., Dimick v. Schiedt*, 293 U.S. 474, 486-87, 55 S. Ct. 296, 301 (1935); *Frederick v. Kirby Tankships, Inc.*, 205 F.3d 1277, 1283 (11th Cir. 2000). In fact, as recently as 2009, the Supreme Court held a district court *must* examine a claim's context and "draw on [the court's] judicial experience and common sense," when evaluating whether a complaint sufficiently pleads a claim under Federal Rule of Civil Procedure 8(a). *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). We note the jurisdictional pleading requirements for removing a case to federal court under § 1446 echo those for filing a complaint in federal court under Rule 8(a). *See Ellenburg v. Spartan Motor Chassis, Inc.,* 519 F.3d 192, 199 (4th Cir. 2008).

by law, may not specify the numerical value of claimed damages." *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880, 882 (5th Cir. 2000) (citing LA. CODE CIV. PROC. art. 893).[6]

Like the Eleventh Circuit, the Fifth Circuit requires that when the complaint omits a specific allegation as to the damage amount, "the removing defendant must prove by a preponderance of the evidence that the amount in controversy is adequate." *See Felton v. Greyhound Lines, Inc.*, 324 F.3d 771, 773 (5th Cir. 2003) (quotations omitted). The defendant may meet its burden "by establishing that it is 'facially apparent' that the claims probably exceed $75,000." *Id.*

In *Luckett v. Delta Airlines, Inc.*, for example, the Fifth Circuit held that a complaint sufficiently established federal diversity jurisdiction in a case removed from Louisiana state court, despite the lack of a specific damage request. 171 F.3d 295, 298 (5th Cir. 1999). The Fifth Circuit "found [the] complaint's allegations of property damage, travel expenses, [an] emergency ambulance trip, six days in the hospital, pain and suffering, humiliation, and a temporary inability to do

---

[6] Article 893 of the Louisiana Code of Civil Procedure states, in relevant part:
> No specific monetary amount of damages shall be included in the allegations or prayer for relief of any original, amended, or incidental demand. The prayer for relief shall be for such damages as are reasonable in the premises except that if a specific amount of damages is necessary to establish the jurisdiction of the court, the right to a jury trial, the lack of jurisdiction of federal courts due to insufficiency of damages, or for other purposes, a general allegation that the claim exceeds or is less than the requisite amount is required.

housework . . . combined to meet the jurisdictional requirement even though no amount of damages was pled." *Felton*, 324 F.3d at 774 (summarizing the holding in *Luckett*); *Luckett*, 171 F.3d at 298 ("Reading the face of the complaint, the district court did not err in finding that Luckett's claims exceeded $75,000.").

Similarly, in *Gebbia*, the Fifth Circuit held that a complaint lacking a specified damage request met the amount-in-controversy requirement. The court explained that the plaintiff's allegations—that her slip and fall resulted in severe physical injury, lost wages, lost enjoyment of life, and pain and suffering—appeared to comprise a claim worth more than $75,000. 233 F.3d at 883 (affirming the district court's denial of the plaintiff's motion to remand to Louisiana state court). Conversely, in *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848 (5th Cir. 1999), the Fifth Circuit held, after evaluating the allegations in a complaint, that "damages comprising only an injured shoulder, bruises, abrasions, unidentified medical expenses, and a loss of consortium did not meet the amount-in-controversy requirement." *Felton*, 324 F.3d at 774 (summarizing the holding in *Simon*); *Simon*, 193 F.3d at 851–52 (ordering the district court to remand the case to Louisiana state court, because "it was not 'facially apparent' [from the complaint] that the amount of damages would exceed $75,000"). As these examples demonstrate, the Fifth Circuit has repeatedly acknowledged the power of

district court judges to appraise the worth of plaintiffs' claims based on the nature
of the allegations stated in their complaints.

The Third Circuit also has recognized the district courts' authority to
independently appraise the value of pleaded claims. *See Angus v. Shiley Inc.*, 989
F.2d 142 (3d Cir. 1993); *see also Frederico v. Home Depot*, 507 F.3d 188 (3d Cir.
2007).  In *Angus*, for example, the Third Circuit evaluated the amount in
controversy in a case where the complaint prayed for, *at minimum,* $40,000.
*Angus*, 989 F.2d at 154.  The Third Circuit explained that a district court does not
measure the amount in controversy by a plaintiff's statement of his minimal
damage expectations, but rather by "a reasonable reading of the value of the rights
being litigated." *Id.* at 146.  The court concluded that, "given that the complaint
[did] not limit its request for damages to a precise monetary amount, the district
court properly made an independent appraisal of the value of the claim." *Id.* at
146 (footnote omitted).

We have found no case in any other circuit that purports to prohibit a district
court from employing its judicial experience or common sense in discerning
whether the allegations in a complaint facially establish the jurisdictionally
required amount in controversy. The Fifth and Third Circuits' recognition of a

district courts' authority to determine the reasonable value of a claim comports with our precedent and our holding in this case.

### 3. *Protecting the Right to Remove*

This common-sense approach to deciding a jurisdictional challenge is especially useful in cases brought under Alabama's Wrongful Death Act, in which no compensatory damages may be recovered.[7] Restricting recovery to only punitive damages eliminates many of the traditional means available to defendants to obtain information about the value of claims. For example, an Alabama Wrongful Death Act award does not reflect the decedent's wealth, education, abilities, station in life, or potential for earning. *Tillis Trucking Co., Inc. v. Moses*, 748 So. 2d. 874, 889 (Ala. 1999) (citing *Campbell v. Williams*, 638 So. 2d 804, 810–11 (Ala. 1994)). Instead, the factors used to determine the value of the claims pled by an Alabama Wrongful Death Act plaintiff—factors we discuss below—can generally be evaluated using the complaint's allegations regarding the defendant's behavior.

Sometimes, when a plaintiff's allegations are viewed in light of the award factors, it will be clear that the jurisdictional minimum is likely met. In such

---

[7] The statute creates a cause of action when any "wrongful act, omission, or negligence" that resulted in the death of a "testator or intestate[,] . . . provided the testator or intestate could have commenced an action for such wrongful act, omission, or negligence if it had not caused death." ALA. CODE § 6-5-410.

12

circumstances, preventing a district judge from acknowledging the value of the claim, merely because it is unspecified by the plaintiff, would force the court to abdicate its statutory right to hear the case. This rule would reward plaintiffs for employing the kinds of manipulative devices against which the Supreme Court has admonished us to be vigilant. *Pretka*, 608 F.3d at 766.

For instance, a plaintiff could "defeat federal jurisdiction simply by drafting his pleadings in a way that did not specify an approximate value of the claims and thereafter provide the defendant with no details on the value of the claim." *Id.* Plaintiffs skilled in this form of artful pleading could, with this "trick," simply "make federal jurisdiction disappear." *See id.* Indeed, if courts were to rely solely on a plaintiff's damage statements, as Roe suggests, it is difficult to imagine a punitive damages suit that could be removed against a plaintiff's wishes.[8] Both policy and precedent counsel against rewarding such obfuscating tactics.

Thus, when a district court can determine, relying on its judicial experience and common sense, that a claim satisfies the amount-in-controversy requirements,

---

[8] Some have described approaches that prohibit courts from relying on anything other than a plaintiff's disclosure of jurisdictional facts as placing "an impenetrable bar on the door leading to federal jurisdiction." Jacob R. Karabell, Note, *The Implementation of "Balanced Diversity" Through the Class Action Fairness Act*, 84 N.Y.U. L. REV. 300, 321–322 (2009); *see* Nicole Ochi, Note, *Are Consumer Class and Mass Actions Dead? Complex Litigation Strategies After CAFA & MMTJA*, 41 LOY. L.A. L. REV. 965, 1009 (2008) (describing one such approach as creating "a nearly insurmountable burden" on defendants to prove the amount in controversy if the plaintiff chooses not to specify it).

it need not give credence to a plaintiff's representation that the value of the claim

is indeterminate. Otherwise, a defendant could wrongly be denied the removal to

which it is entitled.

### B. Roe's Complaint

District Judge Thompson independently appraised Roe's claims and

concluded that they likely met the jurisdictional amount in controversy. We

review this determination de novo, applying our own judicial experience and

common sense. *See Williams*, 269 F.3d at 1318. After carefully considering the

complaint, we agree with Judge Thompson's conclusion that the value of Roe's

claims more likely than not exceeds $75,000. Even Roe does not argue that Judge

Thompson's appraisal of the worth of the claims was inaccurate; rather, Roe

contends only that the district judge lacked the power to engage in that analysis in

the first place. As Part II.A. explains, however, the district court did not overstep

by relying on its judicial experience and common sense to determine whether

Roe's claims likely exceed $75,000.

To determine whether a complaint sets forth a claim that meets the

jurisdictional minimum—as we must when cases are removed under the first

paragraph of § 1446(b)—we examine the allegations in light of the particular

causes of action chosen by the plaintiff. Here, Roe sued Michelin under

Alabama's Wrongful Death Act.  The Act allows the representative of a decedent's estate to recover damages from a person or corporation whose "wrongful act, omission, or negligence" resulted in the death of the decedent, provided the decedent "could have commenced an action for such wrongful act, omission, or negligence if it had not caused death." ALA. CODE § 6-5-410.

The statute's goal is to prevent death, not to compensate for the loss of human life, which Alabama believes possesses a value "beyond measure." *See Campbell*, 638 So. 2d at 811.  Thus, a Wrongful Death Act plaintiff may recover only punitive, rather than compensatory, damages. *Id.* at 809.  This limitation, however, does not mean that plaintiffs' recoveries must be modest.  In fact, the Wrongful Death Act "attempt[s] to preserve human life by making homicide expensive." *Id.* at 810 (emphasis added) (quoting *Louis Pizitz Dry Goods Co. v. Yeldell*, 274 U.S. 112, 115–17, 47 S. Ct. 509, 510 (1927)).

In calculating a damage award, an Alabama Wrongful Death Act jury is instructed to consider: (1) the finality of death, (2) the propriety of punishing the defendant, (3) whether the defendant could have prevented the victim's death, (4) how difficult it would have been for the defendant to have prevented the death, and (5) the public's interest in deterring others from engaging in conduct like the defendant's. *Tillis Trucking*, 748 So. 2d at 889.  In assessing punitive damages,

15

the worse the defendant's conduct was, the greater the damages should be. *See*

*Ala. Power Co. v. Turner*, 575 So. 2d 551, 554–55 (Ala. 1991); *Alabama Pattern*

*Jury Instructions: Civil* 11A.28 (2d ed.).[9]

When the value of Roe's claims are analyzed with judicial experience and

common sense, and in light of the five factors above, they likely exceed the

$75,000 jurisdictional requirement. First, as in all wrongful death cases, the

finality of the victim's death must be considered. Roe alleges Michelin irreparably

destroyed something that possessed, according to Alabama law, a value beyond

measure: a human life. Second, nothing in the complaint suggests that punishing

Michelin for the injury it caused would be unjust or inappropriate. As to the third

and fourth factors, which pertain to the prevention of Mejia's death, Roe alleges

Michelin caused Mejia's death through wantonness, that is "[c]onduct . . . with a

---

[9] The Alabama Wrongful Death Act pattern jury instruction reads:

    This is a claim for the wrongful death of (*name of decedent*).

    The damages in this case are punitive and not compensatory. Punitive damages are awarded to preserve human life, to punish (*name of defendant*) for [*his/her/its*] wrongful conduct, and to deter or discourage (*name of defendant*) and others from doing the same or similar wrongs in the future.

    The amount of damages must be directly related to (*name of defendant*)'s culpability, and by that I mean how bad [*his/her*] wrongful conduct was. You do not consider the monetary value of (*name of decedent*)'s life because the damages are not to compensate (*name of plaintiff*) or (*name of decedent*)'s family from a monetary standpoint because of [*his/her*] death.

    The amount you award is within your discretion based on the evidence and the guidelines in this instruction.

reckless or conscious disregard of the rights or safety of others." ALA. CODE 6-11-20(b)(3).  Specifically, Roe alleges Michelin made and sold tires to the public knowing that they were likely to fail under foreseeable driving conditions.  Thus, Roe suggests both that Michelin might have prevented Mejia's death if it were exercising ordinary care and concern for others, and that it did not even attempt to take such measures.  Finally, Roe's allegations imply that the general public has a substantial interest in deterring this conduct.  Roe alleges Michelin sold the defective tires nationwide, thereby endangering the lives of thousands of people.

Viewed in light of these factors, judicial experience and common sense dictate that the value of Roe's claims (as pled) more likely than not exceeds the minimum jurisdictional requirement.  Thus, the district court did not err in finding it had subject-matter jurisdiction and denying Roe's motion to remand the case to state court.

### III. CONCLUSION

Because Roe's complaint states a case that more likely than not exceeds $75,000, we affirm the district court's conclusion that the case was properly removed.

**AFFIRMED.**

17